FILED _____   _____ LODGED
_____ RECEIVED   _____ COPY

FEB 1 8 2020

CLERK U S DISTRICT COURT
DISTRICT OF ARIZONA
BY _____ M DEPUTY

MICHAEL BAILEY
United States Attorney
District of Arizona
ANDREW C. STONE
Arizona State Bar No. 026543
JAMES R. KNAPP
Arizona State Bar No. 021166
Assistant U.S. Attorneys
Two Renaissance Square
40 N. Central Ave., Suite 1800
Phoenix, Arizona 85004
Telephone: 602-514-7500
Email: andrew.stone@usdoj.gov
Email: james.knapp2@usdoj.gov
Attorneys for Plaintiff

REDACTED FOR
PUBLIC DISCLOSURE

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America, | No. CR-20-00165-PHX-JJT (DMF) |
| Plaintiff, | **INDICTMENT** |
| vs. | VIO: 18 U.S.C. § 371<br>(Conspiracy)<br>Count 1 |
| 1. John Michael Caruso,<br>  Aka the "Kryp+0 K!ng,"<br>  (Counts 1-17) | 18 U.S.C. § 1343<br>(Wire Fraud)<br>Counts 2-10 |
| 2. Zachary Salter,<br>  (Counts 1-12) | 18 U.S.C. § 1957<br>(Money Laundering)<br>Counts 11-17 |
| Defendants. | 18 U.S.C. §§ 981 & 982,<br>21 U.S.C. § 853, 28 U.S.C.<br>§ 2461(c)<br>(Forfeiture Allegation) |

**THE GRAND JURY CHARGES:**

**INTRODUCTION**

At all relevant times:

1.     Defendants JOHN MICHAEL CARUSO and ZACHARY SALTER operated an alleged cryptocurrency investment fund called Zima Digital Assets.  According

to the Zima Digital Assets website, it "operates various private funds focusing on investments in cutting-edge technologies, including crypto and other blockchain based assets."

2.      Contracts between Zima Digital Assets and victim investors stated that money provided would be used for digital asset investment and nothing else.  The contracts also specified a guaranteed return on investment.

3.      In reality, Zima Digital Assets was a fraud, not a cryptocurrency investment fund.  CARUSO and SALTER received more than $9 million from victims, but they did not purchase cryptocurrency or other "blockchain based assets" with the investor deposits. Instead, CARUSO and SALTER returned approximately $2 million of the deposits to early investors as purported investment profits. The rest of the money they spent on extravagant items, including private jets, vacations, luxury car rentals, casino gambling, and rental payments on two multi-million dollar mansions.

## FRAUDULENT SCHEME

### Media Misrepresentations

4.      CARUSO and SALTER participated in a number of interviews with various publications in order to obtain favorable press coverage that would increase the allure of their fraudulent scheme.

5.      In a June 27, 2019, interview posted on www.entrepeneur.com, SALTER claims he co-founded Zima Digital Assets with the Kryp+0 K!ng, and that they rely on "a team of high-level analysts around the globe" and partnerships with large financial institutions to trade cryptocurrency for profit.

6.      In a July 14, 2019, interview posted on www.fabulousarizona.com, SALTER states his business partner, Kryp+0 K!ng, is a "world-famous" cryptocurrency trader.

7.      An August 5, 2019, interview posted on www.businessinsider.my entitled, "Meet the Michael Jordan of Algorithmic Cryptocurrency Trading," states that CARUSO, aka Kryp+0 K!ng, is "revered as one of the top cryptocurrency traders amongst high profile

investors on Wall Street" and is arguably "the world's greatest cryptocurrency trader of all time."

8.      In the October 2019 edition of *Cigar Aficionado*, the magazine ran a four-page article on CARUSO.  The feature begins with a discussion about CARUSO playing blackjack for 13 straight hours in a Las Vegas casino, where he was betting between $5,000 and $10,000 a hand.  The article also includes a number of details about how CARUSO purportedly grew his wealth:  "Between 2009 and 2017, Caruso says his wealth spiked to more than $100 million . . . . He went from living with his parents to a $17,000-per-month pad on Central Park South in Manhattan to a ritzy condo in the Sunny Isles section of Miami."

9.      On November 25, 2019, Forbes published an online article entitled, "Zach SALTER on How Blockchain and Crypto Will Benefit the Gig Economy."  In this article, SALTER is identified as co-founder of Zima Digital Assets and states:  "We manage a high frequency and high liquidity cryptocurrency trading portfolio. Principals at ZDA have had a pulse on the digital asset markets since 2011 being early bitcoin investors."  He also stated: "We are constantly looking for arbitration throughout the decentralized pricing model and while we do utilize artificial intelligence components in our market analytics, we still execute all trades using a final judgement [sic] call to ensure each trade is made with surgical precision by our chief investment officer and cofounder, the 'Kryp+0 K!ng.'"

10.     Each of these representations attributed to CARUSO and SALTER in the various media publications—with the exception of CARUSO's marathon gambling session—are false.

**Misrepresentations through Direct Messages**

11.     CARUSO and SALTER used social media to recruit potential victims to invest in Zima Digital Assets.  In particular, CARUSO and SALTER used Instagram to send misrepresentations to potential victims in an effort to perpetrate their fraudulent scheme.

12.    On December 11, 2018, SALTER sent a Direct Message ("DM") on Instagram to a potential victim-investor that stated, in pertinent part, "I hope all is well with you as well.  I mean walking out your front door is risky if you don't know how to walk! But Iv [sic] got a team of 7 analysts and 2 executive traders managing my crypto hedgefund, you wanna make some money let me know I gotchu brother."

13.    On December 31, 2018, SALTER sent a DM to another potential victim-investor that said, "Invest in my crypto fund, give it 90 days and il [sic] guarantee you're satisfied."

14.    On January 1, 2019, SALTER wrote to another potential victim, "I don't think you'll make the minimum investment but if you're serious about making some money il [sic] introduce you to my executive trader and you can go from there.  Iv[e] known you forever so I could convince him to work with you. . . . Yea we just day trade, no buy and holds.  My guys are in and out of the market all day long."

**Contract Misrepresentations**

15.    CARUSO and SALTER sent contracts to their victim-investors that purportedly outlined the terms of the victims' investment with Zima Digital Assets.  Each contract guaranteed a return on investment ("ROI") percentage within a specific time-period.  Specifically, Article 2 of each contract states:  "The money provided by the investor will be used for the following aspects within the venture and nothing further: Digital Asset Investment."

16.    The contracts included an electronic signature from Zima Digital Assets that read either, "John Caruso, Zima Digital Assets LLC" or "Signature on behalf of the fund."

17.    The amount of funds invested by the victims differed, but the contracts guaranteed ROI of up to 30%.

**Defendants' Use of Victim-Investor Money**

18.    CARUSO and SALTER fraudulently obtained millions of dollars by misrepresenting that they were operating a cryptocurrency hedge fund, when in reality they

maintained no investments—cryptocurrency or otherwise.  Rather, they used victims' money for (a) personal enrichment or (b) to pay back earlier victim-investors to help continue the scheme.

19.   CARUSO and SALTER used funds paid by victim-investors for the following items:

       a.    $400,000 for rent at two mansions located in Paradise Valley and Scottsdale;

       b.    $180,000 in jewelry;

       c.    $600,000 in credit card payments;

       d.    $1.4 million in casino losses;

       e.    $350,000 in luxury car rentals; and

       f.    $350,000 on private jets.

## COUNT 1
### Conspiracy
### (18 U.S.C. § 371)

20.   The factual allegations above are incorporated for Count 1.

### OBJECTS OF THE CONSPIRACY

21.   Beginning at a time unknown to the Grand Jury, but at least as early as April 2018, and continuing until January 30, 2020, in the District of Arizona and elsewhere, defendants CARUSO and SALTER, with others known and unknown to the Grand Jury, did unlawfully, knowingly, and intentionally agree and conspire to commit the following offenses:

       a.    Title 18, United States Code, Section 1343, Wire Fraud, and

       b.    Title 18, United States Code, Section 1957, Money Laundering.

### MANNER AND MEANS OF THE CONSPIRACY AND SCHEME TO DEFRAUD

22.   To accomplish the objects of the conspiracy and the scheme to defraud, defendants CARUSO and SALTER did (1) identify potential victims with money to invest, (2) falsely tell victims that their deposits would be used solely for cryptocurrency

investment, (3) seek out favorable press coverage to lend legitimacy to themselves and Zima Digital Assets, (4) disburse the victims' money to themselves, and (5) funnel a portion of new investor money to previous investors to make the investment fund appear legitimate and profitable and conceal the fraud.  The manner and means of the conspiracy are described above, incorporated by reference and re-alleged as though fully set forth herein.

**OVERT ACTS**

23.     In furtherance of the conspiracy, and to achieve the objects of the conspiracy, overt acts were committed, including but not limited to those described above, incorporated by reference and re-alleged as though fully set forth herein.

All in violation of 18 U.S.C. § 371.

**COUNTS 2-10**
**Wire Fraud**
**(18 U.S.C. § 1343)**

24.     The factual allegations above are incorporated in Counts 2-10.

25.     Beginning at a time unknown to the Grand Jury, but at least as early as April 2018, and continuing until January 30, 2020, in the District of Arizona and elsewhere, defendants CARUSO and SALTER, and others known and unknown to the Grand Jury, knowingly and willfully devised and intended to devise a scheme and artifice to defraud and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, and by intentional concealment and omission of material facts.

26.     On or about each of the dates set forth below, for the purpose of executing the scheme and artifice, defendants CARUSO and SALTER did knowingly transmit and caused to be transmitted by means of wire communication in interstate commerce to and from the District of Arizona the signals and sounds described below for each count, each transmission constituting a separate count:

| Count | Date | Description |
|-------|------|-------------|
| 2 | 11/14/2018 | $100,000 wire from L.Y. to CARUSO (x7848) |
| 3 | 11/14/2018 | $7,000 wire from C.A. to CARUSO (x7848) |
| 4 | 11/15/2018 | $350,000 wire from B.R. to CARUSO (x7848) |
| 5 | 11/20/2018 | $5,800 wire from M.B. to CARUSO (x7848) |
| 6 | 03/18/2019 | Email from SALTER to D.T. re executed contract for Zima Digital Assets |
| 7 | 03/20/2019 | $18,000 wire from D.T. to CARUSO (x1778) |
| 8 | 03/26/2019 | $22,000 wire from G.R. to CARUSO (x3516) |
| 9 | 06/14/2019 | Text message from CARUSO to B.C. stating "$850,000 . . . Account established!  Inked agreements and will send back to you!  Wire goes out first thing Monday morning!  Great to have you on board!" |
| 10 | 01/06/2020 | $100,000 wire from D.Z. to CARUSO (x1679) |

All in violation of 18 U.S.C. § 1343.

## COUNTS 11-17
### Transactional Money Laundering
### (18 U.S.C. § 1957)

27.     The factual allegations above are incorporated in Counts 11-17.

28.     On or about the dates set forth below, in the District of Arizona and elsewhere, the specified defendant, and others known and unknown to the grand jury, knowingly engaged and attempted to engage in the following monetary transactions by, through, or to a financial institution, affecting interstate or foreign commerce, in criminally derived property of a value greater than $10,000 as described below, such property having been derived from a specified unlawful activity, that is, wire fraud in violation of 18 U.S.C. § 1343:

| Count | Defendant | Date | Description |
|-------|-----------|------|-------------|
| 11 | SALTER, CARUSO | 06/02/2019 | $12,500 from Defendants' JP Morgan Chase account x1028 to Falcon Beverly Hills, LLC |
| 12 | SALTER, CARUSO | 07/29/2019 | $15,000 from Defendants' JP Morgan Chase account x1028 to Falcon Beverly Hills, LLC |
| 13 | CARUSO | 10/10/2018 | $262,000 cashier's check to First AZ Title |
| 14 | CARUSO | 01/23/2019 | $200,000 from CARUSO's US Bank account x7848 to ARIA Casino |
| 15 | CARUSO | 02/22/2019 | $200,000 from CARUSO's US Bank account x7848 to ARIA Casino |
| 16 | CARUSO | 02/25/2019 | $110,000 from CARUSO's US Bank account x7848 to ARIA Casino |
| 17 | CARUSO | 03/4/2019 | $200,000 from CARUSO's US Bank account x7848 to ARIA Casino |

All in violation of 18 U.S.C. § 1957.

## FORFEITURE ALLEGATION

29.     The factual allegations above are incorporated for the forfeiture allegations.

30.     Pursuant to 18 U.S.C. §§ 981 and 982, 21 U.S.C. § 853, and 28 U.S.C. § 2461(c), and upon conviction of one or more of the offenses alleged in Counts 1 through 17 of this Indictment, defendants CARUSO and SALTER shall forfeit to the United States all right, title, and interest in the following: (a) all property, real or personal, involved in a transaction or attempted transaction in violation of a money laundering statute, or any property traceable to such property; (b) all property, real or personal, which constitutes or is derived from proceeds traceable to a violation of a specified unlawful activity; (c) all property constituting, or derived from, proceeds obtained directly or indirectly as a result of a violation of an offense alleged in this Indictment; and (d) all personal property used or intended to be used to commit or facilitate the commission of an offense alleged in this

1 | Indictment.

2 |      31.    If any of the above-described forfeitable property, as a result of any act or

3 | omission of the defendants:

4 |         a.    cannot be located upon the exercise of due diligence,

5 |         b.    has been transferred or sold to, or deposited with, a third party,

6 |         c.    has been placed beyond the jurisdiction of the court,

7 |         d.    has been substantially diminished in value, or

8 |         e.    has been commingled with other property which cannot be divided

9 |              without difficulty,

10 | it is the intent of the United States to seek forfeiture of any other property of said defendants

11 | up to the value of the above-described forfeitable property, pursuant to 21 U.S.C. § 853(p).

12 |      All in accordance with 18 U.S.C. §§ 981 and 982, 21 U.S.C. § 853, 28 U.S.C.

13 | § 2461(c), and Rule 32.2, Federal Rules of Criminal Procedure.

A TRUE BILL

S/
FOREPERSON OF THE GRAND JURY
Date: February 18, 2020

MICHAEL BAILEY
United States Attorney
District of Arizona

S/
ANDREW C. STONE
JAMES R. KNAPP
Assistant U.S. Attorneys